UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF TENNESSEE *ex rel.* GARY ODOM and ROSS LUMPKIN, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHEAST EYE SPECIALISTS, PLLC, *et al.*, <br><br> Defendants. | Case No. 3:17-cv-00689 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To:  The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

The United States of America and the State of Tennessee (collectively, "the Governments"[1]) seek to intervene in this qui tam action brought under the federal False Claims Act (FCA), 31 U.S.C. § 3729 et seq., and the Tennessee Medicaid False Claims Act (TMFCA), Tenn. Code Ann. § 71-5-181 et seq. (Doc. Nos. 1, 65, 72.) Relators Gary Odom and Ross Lumpkin allege that Defendants Southeast Eye Specialists, PLLC; Southeast Eye Surgery Center, LLC; and Eye Surgery Center of Chattanooga, LLC, defrauded the Medicaid, Medicare, and TennCare programs by engaging in "kickbacks and improper fee splitting related to eye surgery." (Doc. No. 1, PageID# 2.)

---

[1]  Because the positions of and arguments raised by the United States and the State of Tennessee are identical, they will be referred to collectively in this Report and Recommendation where appropriate.

After granting multiple extensions over the course of twenty-eight months, the Court set a deadline of August 9, 2019, for the Governments to decide whether to intervene in the action. (Doc. Nos. 37, 40.) On that date, the Governments declined to intervene on grounds that they had not yet completed their investigation, noting the ability to later seek intervention upon a showing of good cause. (Doc. No. 41.) The Governments now move to intervene on grounds that they have concluded their investigation and request a ninety-day stay to file a complaint in intervention that will join two defendants. (Doc. Nos. 65, 72.) The relators consent to intervention. The defendants do not. (Doc. Nos. 69, 75.)

For the reasons set forth below, the Magistrate Judge will recommend that the Court grant the motions to intervene and stay the action to allow for the filing of a complaint in intervention. (Doc. Nos. 65, 72.)

## I.  Background[2]

On April 7, 2017, Relators Gary Odom and Ross Lumpkin brought this qui tam action under the FCA and TMFCA alleging that the defendants "defrauded—and continue to defraud—Medicare and Medicaid of tens of millions of dollars" through a scheme of referrals in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. (Doc. No. 1, PageID# 2.) Specifically, the relators allege that the defendants created an illegal co-management arrangement in which optometrists referred their patients to ophthalmologists for surgery in exchange for a portion of the resulting Medicaid or Medicare fees and a promise not to compete for routine eye care. (Doc. No. 1.) After six extensions of the sixty-day time limit to keep the complaint sealed pending its decision, the Governments filed a notice declining to intervene on August 9, 2019, because their

---

[2]  The information in this section is drawn from the relators' complaint (Doc. No. 1), the motion to dismiss and the relators' response (Doc. Nos. 54, 55, 63), and the parties' filings regarding the motions to intervene (Doc. Nos. 41, 65, 66, 69, 72, 73, 74, 75, 78, 80).

"investigation had not been completed" and reserving the right "to intervene in the action, for good cause, at a later date." (Doc. No. 41.) The relators elected to continue the action on their own behalf as provided for by the FCA and TMFCA. 31 U.S.C. § 3730(b)(4)(B); Tenn. Code Ann. § 71-5-183(b)(4)(B). The Court ordered the complaint be unsealed and served on the defendants on August 13, 2019. (Doc. No. 42.) All other filings remain under seal. (*Id.*) On December 23, 2019, the defendants filed a motion to dismiss the complaint on the basis of the FCA and TMFCA's public disclosure bar and failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). 31 U.S.C. § 3730(e)(4)(A); Tenn. Code Ann. § 71-5-183(e)(2)(A); Fed. R. Civ. P. 9(b); (Doc. Nos. 54, 55.) The relators filed a response in opposition to the motion to dismiss, to which the defendants replied.[3] (Doc. Nos. 63, 67.)

On February 10, 2020, the United States moved to intervene, join two defendants, and stay the suit for ninety-days to permit it to file a complaint in intervention.[4] (Doc. No. 65.) To demonstrate good cause for late intervention, the United States cites (1) new information learned from continued analysis of documents received from the defendants and additional witness interviews; (2) the relators' support of its intervention; and (3) that the defendants "will not be unduly prejudiced by intervention at this stage [of the proceedings]." (Doc. No. 66, PageID# 290.) The United States seeks to join as defendants John Bierly and Daryl Mann, "the original founders and managers of [Southeast Eye Specialists]" and its current minority owners, under Federal Rule of Civil Procedure 20 because its claims against them "relate to the same series of transactions and

---

[3] The United States also filed a filed a response in opposition to the defendants' motion to dismiss the relators' complaint after seeking to intervene. (Doc. No. 71.)

[4] The State of Tennessee filed a motion to intervene on February 24, 2020, that requests late intervention "for the same reasons as the United States laid out in its Memorandum in Support ([Doc.] No. 66)." (Doc. No. 72.)

occurrences as those filed *qui tam*, and common questions of fact and law will arise." Fed. R. Civ. P. 20(a)(2); (Doc. No. 66, PageID# 288, 292–93.) The United States also requests that this action be stayed for ninety days to allow time to file its complaint in intervention. (Doc. No. 65.)

The defendants responded in opposition, arguing that the United States does not have good cause to intervene because (1) relator consent alone does not constitute good cause; (2) the government does not specify the new information it has identified that warrants late intervention; (3) the government's own actions delayed the discovery of new information; (4) allowing intervention at this stage would prejudice the defendants because intervention would render their time spent briefing their motion to dismiss wasted and further prolong the litigation; and (5) granting the motion would "incentivize future dilatory conduct by the Government."[5] (Doc. No. 69, PageID# 333.) In a footnote, the defendants also argue that all docket entries should be unsealed because "they may be directly relevant to the question of whether the Government's more recent investigation constitutes good cause for late intervention."[6] (Doc. No. 69, PageID# 331 n.3.) The United States filed a reply to the defendants' response, in which it reaffirms its assertion that there is good cause to intervene.[7] (Doc. No. 80.) In its reply, the United States also argues that the

---

[5] The defendants' filed a response in opposition to the State of Tennessee's motion to intervene, in which they argue that the motion "should be denied for the same reasons as the United States' request." (Doc. No. 75, PageID# 369.)

[6] Including a request to unseal the docket in a footnote of their response to the United States' motion does not properly raise the issue, and the Court will not address the issue of unsealing in this Report and Recommendation. The defendants may file a separate motion requesting this relief.

[7] The Court granted leave to file the reply brief that exceeded five pages on June 19, 2020. (Doc. No. 79.) The State of Tennessee also filed a reply to the defendants' response in opposition to its motion to intervene. (Doc. No. 78.) Tennessee argues that its motion to intervene should be granted for "all of the good cause justifications the United States asserted[,]" because there is not undue prejudice to the defendants and "any waste of time and resources by the [d]efendants . . . is their own doing[,]" and because "the relators have consented to Tennessee intervening." (*Id.* at PageID# 380, 382, 384.)

Court should not "unseal the entire pre-intervention docket" because "[t]he only issue before the Court is whether the United States has made a showing of good cause under the FCA" and the sealed docket relates only to "whether the seal and time for making an election decision should be extended." (*Id.* at PageID# 396.) The defendants filed a surreply, in which they repeat their assertion that the United States has not "identified good cause for its belated attempt to intervene." (Doc. No. 82, PageID# 402.)

## II. Analysis

### A. The False Claims Act and Tennessee Medicaid False Claims Act

The FCA allows private citizens, known as relators, to bring qui tam actions against those who knowingly defraud the United States. 31 U.S.C. §§ 3729(a), 3730. The purpose of the qui tam mechanism is to aid the government "by unleashing a posse of ad hoc deputies to uncover and prosecute frauds against the government."[8] *United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 24 (1st Cir. 2007). The FCA incentivizes relators to bring such actions by permitting them to receive a portion of any resulting settlement or penalty and damages awarded by the court.[9] 31 U.S.C. § 3730(d). Over time, however, Congress has made clear that the FCA's primary intended beneficiary is the Government and has amended the statute to make it easier for the Government to take over litigation from a relator by "expand[ing] the 'limited opportunity for Government

---

[8] Congress originally enacted the FCA in 1863 to combat the fraudulent use of government funds during the Civil War. *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

[9] Congress amended the FCA in 1986 to increase relators' incentives to bring qui tam actions by allowing realtors to remain parties to the suit even after government intervention and increasing the amount of the relators' potential recovery. 14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3653 (4th ed. 2020). The legislative history suggests that Congress passed the 1986 amendments to make the FCA "a more effective vehicle for private individuals to disclose fraud[.]" *United States ex rel. Stone v. Rockwell Int'l Corp.*, 950 F. Supp. 1046, 1049 (D. Colo. 1996) (quoting S. Rep. No. 99-345 at 14 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5279).

involvement' and provid[ing] the Government with the option of intervening . . . after it initially declines to intervene." *United States ex rel. Hall v. Schwartzman*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995) (quoting S. Rep. No. 99-345 at 26 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291).

When a relator initiates an FCA action, "[t]he Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information." 31 U.S.C. § 3730(b)(2). The purpose of the sixty-day time period is to allow the Government time to investigate the private claim to determine "whether it is in the Government's interest to intervene and take over the civil action." S. Rep. No. 99-345 at 24 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5289. "The Government may, for good cause shown, move the court for extensions" of the sixty-day period. 31 U.S.C. § 3730(b)(3–4). If the Government elects to intervene, it becomes the primary prosecutor with the relator as a co-plaintiff. *Id.*

If the Government declines to intervene, the relator "shall have the right to conduct the action" and the Government remains a real party in interest. 31 U.S.C. § 3730(b)(4)(B); *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). "When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause."[10] 31 U.S.C. § 3730(c)(3). Courts have found "that the 'good cause' requirement of

---

[10] The TMFCA is modeled on the FCA and its language concerning intervention is identical to the federal statute. *Compare* § 3730(c)(3) ("When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause."), *with* Tenn. Code Ann. § 71-5-183(c)(3) ("When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause."). Because of the similarity between the FCA and TMFCA, courts analyze them in the same way. *See United States v. Anesthesia Servs. Assocs.*, No. 3:16-CV-0549, 2019 WL 7372511, at *5 (M.D. Tenn. Dec. 31, 2019) (reasoning that

6

§ 3730(c)(3) was intended to protect the interests of the relator" by deterring unwarranted government intervention after the relators have "expended considerable resources to advance the case" only to "lose up to half of the reward for bringing the action." *Stone*, 950 F. Supp. at 1049.

### B. Good Cause to Intervene

The FCA and TMFCA do not define good cause, and "case law construing the 'good cause' requirement of 31 U.S.C. § 3730(c)(3) is scarce." *United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-cv-1002-Orl-31DAB, 2011 WL 4480846, at *1 (M.D. Fla. Sept. 27, 2011). Courts generally interpret the standard broadly, following the guiding principle that "[t]he primary purpose of the FCA [is] to protect the government from fraud [ ], so the government should be able to intervene when necessary to protect its own interests." *Griffith v. Conn*, No. 11-157-ART-EBA, 2016 WL 3156497, at *3 (E.D. Ky. Apr. 22, 2016); *see also Hall*, 887 F. Supp. at 62; *United States v. Aseracare*, No. 2:12-cv-245-KOB, 2012 WL 5289475, at *1 (N.D. Ala. Sept. 24, 2012). In determining whether good cause to intervene has been shown, courts look to whether the Government has pointed to new evidence that warrants late intervention and whether intervention would unduly prejudice either party or cause undue delay. *See Guthrie on behalf of United States v. A Plus Home Health Care*, No. 12-60629-CIV-DIMITROULEAS/SNOW, 2013 WL 12384137, at *1–2 (S.D. Fla. July 18, 2013) (finding good cause for intervention where the Government conducted new discovery that altered its opinion of whether the scope of the fraud merited intervention, the relators consented to the intervention, and the defendants did not identify any undue prejudice); *Hall*, 887 F. Supp. at 62–63 (finding good cause where the Government pointed to the discovery of new and significant evidence that changed its view as to the magnitude of the

---

analysis of the sufficiency of the pleading is equally applicable to both the FCA and TMFCA because the language of the statutes is substantively the same).

fraud, the relator wanted government assistance in litigating, and intervention did not unduly prejudice the defendants through duplicative discovery or undue delay).

Courts first examine whether the Government has shown that "'new and significant evidence is found' which 'escalates the magnitude or complexity of the fraud'" and causes it to reevaluate the decision not to intervene. *Hall*, 887 F. Supp. at 62 (quoting S. Rep. No. 99-345, at 26–27 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291–92); *Aseracare*, 2012 WL 5289475, at *1. Once the Government has asserted the discovery of new information supporting intervention, courts generally do not closely examine the nature of the newly discovered evidence or whether the information was available to the Government when it initially decided not to intervene. *See Guthrie*, 2013 WL 12384137, at *1 (allowing intervention after the Government identified specific new information that suggested a broader scope of fraud and declining to accept the defendants argument that intervention should not be allowed because the Government did not diligently investigate the matter before declining to intervene); *Baklid-Kunz*, 2011 WL 4480846, at *1 (allowing intervention after the Government asserted new information gleaned from its continued investigation into the fraud, additional interviews conducted, and additional documents reviewed); *U.S. ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*, No. 09-10179-GAO, 2017 WL 1217118, at *1 (D. Mass. Mar. 31, 2017) (granting the Government's motion to intervene after the completion of formal discovery even though the relators had access to the information that the Government pointed to as constituting good cause).

Courts also routinely address whether intervention would be prejudicial to the parties or cause undue delay.[11] *Griffith*, 2016 WL 3156497, at *3; *Drennen*, 2017 WL 1217118, at *8; *Hall*,

---

[11] The United States, State of Tennessee, and the defendants agree that undue prejudice to the parties and undue delay are factors that courts examine when considering whether to allow

887 F. Supp. at 62. Courts tend to give more weight to a finding of prejudice to the relator than a finding of prejudice to the defendant because the late-intervention provision is intended to protect the relator's interest in recovery. *See Stone*, 950 F. Supp. at 1049 (relying heavily on the fact that the relator consented to government intervention when granting the motion to intervene). In determining whether intervention would prejudice the parties or cause undue delay, courts look at the length of the delay before intervention and the stage of the proceedings when the intervention motion is made. *Sharpe ex rel. United States v. Americare Ambulance*, No. 8:13-cv-1171-T-33AEP, 2017 WL 2986258, at *2 (M.D. Fla. July 13, 2017); *Drennen*, 2017 WL 1217118, at *8; *Hall*, 887 F. Supp. at 62. This Court has not identified any decision in which a court has found that allowing government intervention when a case is still in the early stages of discovery unduly prejudices the other parties or causes undue delay.

In this case, the Governments argue that they have good cause to support their motion by pointing to evidence discovered in their continued investigation of the case after their initial decision not to intervene. (Doc. Nos. 77, 80.) The new evidence comes from analysis of the types of remunerations allegedly given by the defendants for referrals and the pattern of referrals using data acquired after the decision not to intervene and from additional witness interviews. (Doc. No. 80.) Courts generally allow late intervention based on this kind of new evidence. *See Guthrie*, 2013 WL 12384137, at *1 (permitting intervention when "the Government notes that it has obtained evidence refuting Defendants' [previous] representations" that "suggests an escalated scope of the fraud"); *Baklid-Kunz*, 2011 WL 4480846, at *1 (allowing intervention where "the Government asserts that it has continued its investigation . . . by interviewing additional witnesses

---

intervention. (Doc. Nos. 66, 69, 72, 77, 80, 82.) The Court need not consider whether Rule 24 applies to government motions to intervene in FCA actions.

and reviewing additional documents" and "now has determined that the facts merit intervention"); *Hall*, 887 F. Supp. at 62 (allowing intervention when the government points to the discovery of additional witnesses that suggests "the scope of the alleged fraud is more extensive that it originally anticipated"). The defendants do not identify any cases in which such new evidence has been found not to support late intervention. The Governments have therefore identified sufficient new evidence to support a finding of good cause.

Further, the relators and the defendants will not be unduly prejudiced by late intervention, nor will it cause undue delay. The relators consent to intervention, which weighs heavily in the favor of allowing it. *Stone*, 950 F. Supp. at 1049. Additionally, the defendants will not be unduly prejudiced because only six months elapsed between the Governments' decision not to intervene and their current motion and formal discovery has not yet begun. The defendants have not identified, nor has this Court found, any case in which courts deemed intervention before the start of formal discovery to prejudice defendants or to cause undue delay. *See Sharpe*, 2017 WL 2986258, at *2 (finding that intervention will not result in undue prejudice or delay because almost a full year of discovery remained); *Hall*, 887 F. Supp. at 62 (finding that the broadening of discovery is not a sufficient basis to deny intervention where it will not result in duplicative discovery or undue delay and the parties have just started the formal discovery process); *Aseracare*, 2012 WL 5289475, at *2 (finding no undue prejudice to the defendants where the parties are in the early stages of formal discovery, even though some additional discovery would be required upon government intervention). Further, the Governments' six-month delay in intervening here is comparable to—or much shorter than—periods of delay found not to prejudice the parties in similar cases. *See Sharpe*, 2017 WL 2986258, at *1 (granting motion to intervene filed five months after Government decided not to intervene); *Baklid-Kunz*, 2011 WL 4480846, at

*1 (granting motion to intervene filed fifteen months after Government decided not to intervene); *Hall*, 887 F. Supp. at 61–62 (granting motion to intervene filed fifteen months after Government decided not to intervene); *Stone*, 950 F. Supp. at 1048 (granting motion to intervene filed over three years after Government decided not to intervene).

The defendants argue that they will be prejudiced because intervention would render the resources they spent briefing their motion to dismiss the relators' complaint wasted. (Doc. No. 69.) Although this does constitute some harm to the defendants, it is not weighty enough to prevent intervention. *See Guthrie*, 2013 WL 12384137, at *2 (granting intervention with the defendants' motion to dismiss still pending); *United States ex rel. Roberts v. Sunrise Senior Living*, No. CV 05-3758-PHX-MHM, 2009 WL 499764, at *2 (D. Ariz. Feb. 26, 2009) (granting intervention with two motions to dismiss pending). The reasons behind including a late-intervention provision in the FCA and the TMFCA and the relevant case law all counsel in favor of allowing intervention at this stage of the case. Accordingly, the Governments' motions to intervene should be granted.

### C. United States' Motion to Join Two Defendants and Stay the Suit for Ninety Days

The United States also requests leave to join as defendants John Bierly and Daryl Mann, "the original founders and managers of [Southeast Eye Specialists]" and current minority owners, pursuant to Federal Rule of Civil Procedure 20. Fed. R. Civ. P. 20(a)(2); (Doc. No. 66, PageID# 292–93.) Rule 20 allows that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Courts are to employ a liberal approach to permissive joinder of parties in the interest of judicial economy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The United States asserts that its claims against Bierly

and Mann arise from their roles in Southeast Eye Specialists and therefore "arise out of the same series of transactions and occurrences [as the existing claims in this action] and common questions of fact and law will arise." (Doc. No. 66, PageID# 293.) The United States also asks the Court to stay the action for ninety days to allow time for the Government to file its complaint in intervention. (Doc. No. 65.)

The defendants do not oppose joining Bierly and Mann in the action. They also do not oppose a ninety-day stay to allow filing a complaint in intervention. That relief should therefore be granted.

### III.     Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the United States' motion to intervene, add two defendants, and stay the suit for 90 days (Doc. No. 65) and the State of Tennessee's motion to intervene (Doc. No. 72.) be GRANTED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 31st day of July, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge