IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF TENNESSEE ex rel. GARY ODOM and ROSS LUMPKIN, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHEAST EYE SPECIALISTS, PLLC, SOUTHEAST EYE SURGERY CENTER, LLC, and EYE SURGERY CENTER OF CHATTANOOGA, LLC, <br><br> Defendants. | Civil Case No. 3:17-cv-689 <br> Chief Judge Waverly D. Crenshaw, Jr. |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO UNSEAL DOCUMENTS

Defendants SouthEast Eye Specialists, PLLC, SouthEast Eye Surgery Center, LLC, and

Eye Surgery Center of Chattanooga, LLC (collectively, "Defendants") respectfully submit this

memorandum in support of their motion to unseal all documents filed in this action that remain

under seal.

## PRELIMINARY STATEMENT

Of the roughly 113 total docket entries in this False Claims Act ("FCA") *qui tam* action,

41 are presently under seal.  The Complaint itself, however, was unsealed long ago, and the United

States and Tennessee have sought—and been denied—permission to intervene.  The FCA's under-

seal provision exists to avoid "tipping off" defendants about the government's investigation *before*

the complaint is unsealed and the government decides whether to intervene.  As a result, there is

little reason why any docket entries in this case should remain under seal.  Other than a boilerplate

justification that other courts have rejected, the governments have failed to explain why ongoing secrecy is required.

While unsealing is appropriate for *all* of the filings in this case, it is especially warranted for two affidavits of government investigators, Agents Philip Cicero and Angela Beverly, that the United States and Tennessee used to support their recent motions to intervene. Though filed under seal, ex parte, and in camera, the contents of those affidavits were discussed in detail by the parties and the Court in a public hearing, and the governments have made little effort to protect their confidentiality. Meanwhile, the United States has now appealed the Court's denial of its motion to intervene, making it essential that Defendants receive full access to the very affidavits on which the Court based its decision.

The integrity and confidentiality of the governments' investigation may at one time have justified keeping some of the filings in this case under seal, but that time has long passed. Fairness to Defendants, as well as the strong presumption in favor of public access to judicial records, now require that all docket entries be unsealed.

## BACKGROUND

Relators Gary Odom and Ross Lumpkin filed this FCA *qui tam* action on behalf of the United States and the state of Tennessee more than four years ago. (*See* Dkt. No. 1.) Consistent with the statutory requirements, Relators originally filed their complaint under seal to provide the United States and Tennessee an opportunity to investigate their allegations and decide whether to intervene. *See* 31 U.S.C. § 3730(b). As is often the case in FCA actions, however, the governments claimed they were unable to complete their investigation within the 60-day period provided by the statute. The United States and Tennessee sought and obtained from the Court multiple extensions of the seal period and intervention deadline, each of which required a showing of "good cause." In the meantime, they conducted a wide-ranging factual investigation of

Relators' allegations. After more than two years of investigation, the Court set a final deadline of August 9, 2019, for the governments to decide whether to intervene.

When that date arrived, the United States and Tennessee filed a joint notice that "they [we]re not intervening at this time." (Dkt. No. 41 at 1.) Despite having had more than twenty-eight months to investigate Relators' allegations, they represented that they still had not completed their investigation and thus were "not able to decide whether to proceed with the action." (*Id.*) Having decided not to intervene, they requested that Relators' Complaint be unsealed along with their notice. But, they requested that "all other papers on file in this action remain under seal." (*Id.* at 2.) To justify that request, they stated only that, "in discussing the content and extent of the Governments' investigation, such papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended." (*Id.*)

Several days later, the Court granted the United States and Tennessee's request. (*See* Dkt. No. 42.) The Court unsealed the Complaint and the governments' joint notice electing not to intervene, but maintained the seal over all other previous filings. (*Id.*) Those docket entries, numbers 2 through 40, remain under seal and are not visible on the public docket. Nor have Defendants been provided a copy of those filings.

About six months later, and after Defendants had moved to dismiss Relators' Complaint, the United States reversed course and moved to intervene. (*See* Dkt. No. 65.) Citing its purported need to "complete[]" its investigation, the United States argued that good cause existed for belated intervention in part because it had only recently finished its investigative work. (Dkt. No. 66 at 4-5.) Roughly two weeks later, Tennessee also moved to intervene "for the same reasons as the United States." (Dkt. No. 72 at 1.) The Magistrate Judge recommended that both motions to

intervene be granted (*see* Dkt. No. 84), but Defendants objected to the Magistrate Judge's Report and Recommendation (*see* Dkt. No. 85).

The Court held an initial hearing on the governments' motions to intervene on September 30, 2020. During the hearing, the Court noted that the burden of proof for establishing good cause to intervene was on the governments and explained that there was "no evidentiary basis currently before the Court" on which the Court could exercise its discretion to grant the governments' motions. (*See* Transcript of Proceedings at 22 (Sep. 30, 2020), Dkt. No. 93.) Accordingly, the Court ordered the Government to file, under seal, affidavits from two of the governments' investigators, Agents Phillip Cicero and Angela Beverly, detailing the history of the governments' investigation, the findings and conclusions of the investigation, and the justification for the governments' belated motions to intervene. (Dkt. No. 92.) The Court also directed that the two affidavits, although filed under seal, were to be provided to Defendants' counsel on an "attorneys' eyes only" basis. (*Id.* at 22.)

Following the initial hearing, the governments requested that the Court modify its order to permit them to provide only *redacted* versions of the affidavits to Defendants' counsel, a step they said was necessary "to protect privileged information." (Dkt. No. 95 at 3.) The Court granted that request, and the governments filed the two affidavits under seal a few weeks later. (Dkt Nos. 96, 100, 101.) Although the governments ultimately provided Defendants' counsel an unredacted version of Agent Cicero's affidavit, the version of Agent Beverly's affidavit that they provided contained extensive redactions.

The Court convened a second hearing on the governments' motions to intervene on February 24, 2021. At the beginning of the hearing, counsel for the United States requested that the Court "seal any portion of the transcript … that contains references to the sealed versions of the two agent affidavits." (*See* Transcript of Proceedings at 5 (Feb. 24, 2021), Dkt. No. 105.) The

4

Court denied that request, explaining that the courtroom was open to the public, and that a process exists for protecting confidential information, which the United States had not followed. (*Id.*) The Court then heard argument from the parties. In explaining why good cause existed to justify its belated intervention, counsel for the United States expressly relied on "the redacted portions" of Agent Beverly's affidavit, which counsel described as "explain[ing] why" additional interviews and other purported new evidence the United States had gathered "was particularly significant and influenced the [United States] to be able to make that decision"—that is, to seek to intervene. (*Id.* at 8, 11.).

At the conclusion of the parties' arguments, the Court stated that it was denying the governments' motions to intervene and offered a detailed explanation for that decision on the record. The Court held that the affidavits of Agent Beverly and Agent Cicero failed to establish good cause for belated intervention, in large part because they made clear that the governments' continued investigation had not uncovered any significant new facts after the governments initially declined to intervene. Importantly, to demonstrate the lack of any such new facts, the Court quoted directly from portions of Agent Beverly's sealed affidavit—including portions redacted from the version of the affidavit that was provided to Defendants' counsel—in which Agent Beverly described statements made by interviewees and the findings of the governments' more recent investigative efforts. (*Id.* at 34-35.) The Court also noted that the governments had already received "multiple extensions of time to decide whether or not to intervene in this case." (*Id.* at 32.)

Later that day, the Court issued a written order denying the governments' motions to intervene for the reasons stated on the record during the public hearing.[1] (Dkt. No. 104.). The

---

[1] The Court's order also directed Relators and Defendants to participate in mediation, and denied Defendants' then-pending motion to dismiss without prejudice to facilitate mediation.

5

hearing transcript was filed two days later, on February 26, 2021, and Defendants are unaware of any party requesting that any portion of it be redacted. (Dkt. No. 105.) Thus, while the affidavits of Agents Cicero and Beverly remain under seal, the portions of Agent Beverly's affidavit from which the Court quoted during the February 24, 2021, hearing are now public record.

On March 26, 2021, the United States filed a notice of appeal of the Court's order denying its motion to intervene. Agent Cicero's and Agent Beverly's affidavits remain under seal, as do docket entries 2 through 40, which include the governments' repeated requests for extensions of the seal period and intervention deadline.

## ARGUMENT

**I.    There Is No Justification for Maintaining the Cicero and Beverly Affidavits Under Seal.**

Whatever basis may once have existed for sealing the affidavits of Agents Beverly and Cicero, no justification for their continued secrecy remains. For several reasons, the two affidavits should be immediately unsealed, with full access to unredacted copies granted to Defendants and the public.[2]

***First***, the United States has effectively waived any privilege applicable to the information in the affidavits by relying on that information to support its motion to intervene and by failing to take appropriate steps to safeguard its confidentiality. To justify the secrecy of the two affidavits, the United States invoked several privileges, arguing that the provision of unredacted versions to

---

[2] As explained more fully in the accompanying Motion, after Defendants informed the United States and the state of Tennessee that it intended to file this Motion, the United States indicated it would consent to unsealing *some* sealed documents, but inexplicably refused to inform Defendants which ones. The United States and Tennessee then filed their own motion to unseal—without conferring with Defendants in violation of the Local Rules—shortly before the time that Defendants had indicated they intended to file this Motion. (*See* Dkt. No. 112.) Based on the governments' motion to unseal, Defendants now understand that the governments do not oppose the unsealing of the Cicero affidavit or certain exhibits attached to the Beverly affidavit. (*Id.* at 2.) The governments' motion offers no justification for why the Beverly affidavit itself, unlike the Cicero affidavit, should remain sealed.

Defendants would reveal the United States' protected work product, information protected by the "investigatory files privilege," or the contents of government deliberative processes. (Dkt. No. 95 at 4-7.) But, even assuming information in the affidavits were once subject to some privilege, the United States has now publicly *relied on* that information to support its motion to intervene, a deliberate strategic choice triggering an implicit waiver. (*See* Dkt. 105 at 7 (counsel for the United States describing the contents of the Beverly affidavit while arguing that it "provides ample detail and facts to support a finding of good cause"; *id.* at 11 (counsel for the United States noting that the "redacted portions of Agent Beverly's affidavit … explained why the evidence was particularly significant and influenced the U.S. to be able to make that [intervention] decision").)

As the Sixth Circuit has explained, "litigants cannot hide behind the privilege if they are relying on privileged communications to make their case"; in other words, they cannot use privilege as both "a shield and a sword." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005). Here, that is exactly the approach taken by the United States. By relying on sealed and purportedly privileged information about its investigation of Relators' allegations as the "good cause" for belated intervention, the United States has deliberately placed that information at issue. Because the United States has used supposedly privileged information as a "sword" to support its motion to intervene, it should not be permitted to "shield" that very same information from Defendants and the public. *See, e.g.*, *Singh v. Vanderbilt Univ. Med. Ctr.*, 2019 WL 254660, at *3 (M.D. Tenn. Jan. 17, 2019) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act or for his own benefit and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." (internal quotation marks omitted)).

Nor has the United States exercised reasonable care to protect the supposedly privileged and confidential information in the affidavits. The United States was well aware that the content

of the affidavits would be the focus of the second hearing on the governments' motions to intervene, yet the United States did not request in advance that the proceedings be closed to the public. Instead, the United States waited until the public hearing was underway and only *then* requested that the hearing transcript be sealed—a request the Court denied. (Dkt. No. 105 at 5.) Moreover, in the time since the hearing, Defendants are not aware of the United States ever requesting that any portion of the public transcript be redacted, even though it contains extensive discussion of the contents of the sealed affidavits. Given that the United States has failed to take even basic steps necessary to protect the confidentiality of the affidavits, it is no position to argue that they should remain sealed.

*Second*, the Court's reliance on the two affidavits to support its decision to deny the governments' motions to intervene also supports making the affidavits public and accessible to Defendants. In explaining why the governments' had *not* demonstrated "good cause" for belated intervention, the Court summarized the content of the two affidavits in great detail in open court, describing exactly what investigative efforts the Beverly affidavit, in particular, had revealed, and even quoting from Agent Beverly's description of what the governments learned from particular witness interviews.[3] At bottom, the Court concluded that the affidavits did not contain sufficient explanation about how or why the governments' more recent investigative efforts had changed their view of the case and failed to point to any meaningful new evidence. (Dkt. 105, at 37.) It was on that express basis that the Court denied the governments' motions. (*Id.* ("The [governments'] tepid submission does not come close to establishing the good cause necessary to intervene ….").)

---

[3] Information that the Court quoted in the public proceeding even included content that had been redacted from the version of the Beverly affidavit provided to defense counsel. (*See* Dkt. No. 105, at 34-35, 37-38.)

The Court's reliance on the affidavits is significant because, as a general matter, "[s]ecrecy persists only if the court does not use [sealed] information to reach a decision on the merits." *Duthie v. Matria Healthcare, Inc.*, 2008 WL 1829721, at *1-2 (N.D. Ill. Apr. 23, 2008) (directing that document previously filed with redactions should be "included in the record in its unredacted form" because "that document [was] expressly referred to in [the court's] decision"). As the Seventh Circuit has explained, "[j]udges deliberate in private but issue public decisions after public arguments *based on public records*," and thus "[i]nformation that … becomes the basis of decision enters the public record." *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) (emphasis supplied). Similarly, the Sixth Circuit has confirmed that "[t]he public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). For that reason, while "[s]ecrecy is fine … before the material enters the judicial record," "very different considerations apply" at "the adjudication stage," where "the public is entitled to assess for itself the merits of judicial decisions." *Id.* Here, it would be impossible for the public to fully assess the merits of the Court's decision denying the governments' motions to intervene without access to the affidavits on which the Court's decision was based.

**Third**, given the United States' pending appeal of the Court's order denying its motion to intervene, it is only fair that both Defendants' counsel **and Defendants themselves** have access to the full, unredacted affidavits. That access is necessary to ensure that Defendants may reasonably formulate their strategy on appeal and fully brief the issues presented by the Court's order to the Sixth Circuit. Without access to the unredacted affidavits, Defendants would be forced to explain to the appellate court why this Court's denial of the United States' motion to intervene was not an abuse of discretion, while lacking full access to the very documents on which the Court's exercise of discretion was based. Given that the United States does, of course, have access to the full

9

documents, that circumstance would be plainly unfair.

Further complicating matters, the two affidavits were provided to defense counsel on an "attorneys' eyes only" basis. (*See* Dkt. No. 93 at 22.) As a result, Defendants themselves have been unable to review *any* version of the Beverly or Cicero affidavits, redacted or otherwise. That only heightens the unfairness on appeal. As it stands, defense counsel cannot straightforwardly communicate with their clients about the context or significance of the facts included in the affidavits, limiting their ability to have frank and fulsome discussions about appellate strategy.[4]

For all of these reasons—the United States' implicit waiver, judicial transparency, and ensuring fairness on appeal—the affidavits of Agents Cicero and Beverly should be fully unsealed and placed on the public docket.

## II.     The Strong Presumption of Public Access to Court Records Compels Unsealing All Other Sealed Filings.

In addition to the Cicero and Beverly affidavits, the Court should also unseal all of the other filings that remain sealed in this action (*See* Dkt. Nos. 2 through 40), including the governments' repeated requests for extensions of the initial FCA seal period and intervention deadline.[5]

The FCA's *qui tam* provisions require that a private relator's complaint initially be filed under seal, after which the government has sixty days to investigate the allegations and decide

---

[4] It is equally important that Defendants' counsel be able to freely discuss the contents of the affidavits with their clients in connection with the upcoming court-ordered mediation. The affidavits include critical information about the scope and findings of the governments' investigation that is highly relevant to any potential settlement efforts.

[5] The governments' pending motion to unseal seems to concede that the governments' motions requesting extensions of the seal period and intervention deadline should be unsealed, but requests that the accompanying supporting memoranda remain sealed. (*See* Dkt. No. 112 at 2.) The governments' motion offers no explanation at all for the continued secrecy of the memoranda. For the reasons explained herein, Defendants submit that both the motions *and* the supporting memoranda should be unsealed, along with all other sealed documents.

10

whether to intervene. *See* 31 U.S.C. § 3730(b). Extensions of the 60-day seal period may be granted for "good cause." *Id.* While the complaint is under seal, all associated filings—including requests for extension of the seal period—are typically sealed as well, as they were in this case. *See id.* § 3730(b)(3) (permitting "affidavits or other submissions" supporting a request for extension of the seal period to be filed *in camera*).

Once the government makes an intervention decision, however, the complaint is unsealed and must be served on the defendants. *See* 31 U.S.C. § 3730(b). Although the FCA does not specifically provide for the unsealing of other documents at that juncture, "nothing in the text of the FCA authorizes … an indefinite seal on record materials beyond the Complaint." *U.S. ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, 912 F. Supp. 2d 618, 626 (E.D. Tenn. 2012). In fact, "the primary purpose of the [FCA's] under-seal requirement is to permit the Government sufficient time in which it may ascertain the status quo and come to a decision as to whether it will intervene in the case filed by the relator." *U.S. ex rel. Summers v. LHC Grp., Inc.*, 623 F.3d 287, 292 (6th Cir. 2010) (abrogated in part on other grounds). Keeping the relevant filings under seal facilitates the government's decision-making process "by enabling it to investigate the alleged fraud without tipping off investigative targets at a sensitive stage." *United States v. Creekside Hospice II, LLC*, 2015 WL 9581743, at *2 (D. Nev. Dec. 30, 2015). It follows that once the government has completed its investigation and made an intervention decision, little justification remains for keeping either the complaint or any other documents under seal.

As the Sixth Circuit has recognized, "[t]here is a strong public policy in favor of public access to judicial proceedings," and FCA actions are no exception. *U.S. ex rel. Mahmood v. Elizabethtown Hematology Oncology, PLC*, 2015 WL 6870140, at *2 (W.D. Ky. Nov. 6, 2015) (quoting *In re Polemar Constr. Ltd. P'ship*, 23 F. App'x 423, 425 (6th Cir. 2001)). Indeed, "the presumption in favor of public access to court filings is especially strong where the filings involve

11

matters of particular public concern, such as allegations of fraud against the government." *U.S. ex rel. Ruble v. Skidmore*, 2011 WL 5389325, at *3 (S.D. Ohio Nov. 8, 2011). In a *qui tam* action, "the taxpaying public are, in effect, [the] real parties in interest … which strengthens the case for public access to the documents in such actions." *Mahmood*, 2015 WL 6870140, at *3.

Recognizing these principles, "courts routinely unseal the dockets of *qui tam* actions once litigation is underway."[6] *Creekside Hospice II*, 2015 WL 9581743, at *3. While the decision to unseal any particular document is a matter of the court's discretion, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). Courts typically "place[] the burden on the Government to demonstrate that continued sealing is appropriate." *U.S. ex rel. Davern v. Hoovestol, Inc.*, 2015 WL 6872427, at *4 (W.D.N.Y. Nov. 9, 2015); *accord Life Care*, 912 F. Supp. 2d at 626. In FCA actions, courts "have, in general, lifted the seal on the entire record except for specific documents that: (1) reveal confidential investigative methods or techniques; (2) jeopardize an ongoing investigation; or (3) harm non-parties." *U.S. ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 402 (E.D. Pa. 2018) (internal quotation marks omitted); *see also U.S. ex rel. Bingham v. HCA, Inc.*, 2012 WL 5997952, at *2 (E.D. Tenn. Nov. 30, 2012) (reciting same factors).

Here, the United States and Tennessee have completed their investigation, and the Court has already unsealed Relators' Complaint. Thus, the main purpose of the FCA's under-seal requirement—to avoid "tipp[ing] off" the defendants about the government's investigation—no longer has any role to play, and nothing inherent in the nature of FCA proceedings warrants ongoing secrecy. *Life Care*, 912 F. Supp. 2d at 623. On the contrary, because Relators' allegations

---

[6] *See, e.g.*, *U.S. ex rel. Hinkle v. Caris Healthcare, L.P.*, No. 3:14-cv-212, Dkt. No. 51 (E.D. Tenn. Aug. 11, 2016) (unsealing all docket entries); *U.S. ex rel. White v. Gentiva Health Servs., Inc.*, No. 3:10-cv-394, Dkt. No. 27 (E.D. Tenn. Apr. 12, 2013) (same); *Mahmood*, 2015 WL 6870140, at *3 (same); *U.S. ex rel. Howard v. Life Care Ctrs. of Am., Inc.*, 2005 WL 2674939, at *3 (E.D. Tenn. Oct. 20, 2005) (same).

12

involve "matters of particular concern to the public"—alleged fraud against the Medicare and TennCare programs—the case for unsealing the *entire* docket here is "especially strong." *U.S. ex rel. Herrera v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 785 (E.D. Mich. 2008); *see also, e.g.*, *U.S. ex rel. Kammarayil v. Sterling Ops., Inc.*, 2018 WL 6839747, at *7 (D.D.C. Dec. 31, 2018) (holding that "public interest and purpose factors weigh[ed] strongly in favor" of unsealing memoranda of law that had accompanied the government's requests for extensions of the FCA seal period and intervention deadline).

On top of the public's interest in transparency, Defendants' interests also favor unsealing the entire docket. As one court has recognized, access to prior filings in FCA cases is "critical for [defendants] to adequately evaluate the allegations against [them] and assert all potential defenses." *Creekside Hospice II*, 2015 WL 9581743, at *3 (holding that "[t]ransparency in judicial administration of cases and [the defendant's] own right to assess and defend the allegations compels a complete unsealing"). That interest is especially relevant here, where the United States and Tennessee sought to intervene in the action for "good cause" more than six months after the Court's final intervention deadline, and the United States has since appealed the Court's denial of its motion. (*See* Dkt. Nos. 65, 72, 110.) In support of their requests to intervene, the United States and Tennessee asserted that they were unable to complete their investigation before the Court's deadline, putting their prior representations to the Court about the progress of their investigation squarely at issue. The Court itself noted those extension requests in its oral ruling denying the motions to intervene. (Dkt. 105, at 32.) Because the extension requests (and possibly other sealed docket entries) are thus directly relevant to the Court's denial of the governments' motions to

13

intervene,[7] fairness and basic due process considerations dictate that Defendants have access to those documents in connection with the United States' pending appeal.

In sum, given the heightened interests of both the public and Defendants in having access to the complete docket, the Court should apply the "strong presumption in favor of public access to judicial records" and unseal all previous filings. *Herrera*, 665 F. Supp. 2d at 785.

## III. The United States and Tennessee Offered No Compelling Justification for Maintaining the Seal Over Any Document.

Even assuming the FCA were to allow for particular documents to remain under seal indefinitely—a proposition one court in this circuit has characterized as "dubious"—the government would still be "required to demonstrate 'good cause' as a prerequisite." *Life Care*, 912 F. Supp. 2d at 626. Here, however, neither the United States nor Tennessee has met (nor attempted to meet) that burden with respect to even a single sealed document. *See U.S. ex rel. Brown v. Celgene Corp.*, 2014 WL 12588296, at *1 (C.D. Cal. Mar. 21, 2014) (explaining that the party seeking to maintain the seal bears the burden "to make a particularized showing of good cause with respect to each document at issue" (internal quotation marks omitted)).

The United States and Tennessee's original joint notice declining to intervene stated that all sealed papers other than the Complaint should remain under seal "because in discussing the content and extent of the Governments' investigation, such papers [were] provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended." (Dkt. No. 41 at 2.) The United States has repeated this justification in a more recent filing. (See Dkt. No. 80 at 8.) In reality, however, it is only a conclusory, copy-

---

[7] Other courts have commonly unsealed such extension requests. *See, e.g.*, *U.S. ex rel. Yannity v. J&B Med. Supply Co.*, 2011 WL 4484804, at *6 (E.D. Mich. Sep. 27, 2011); *Creekside Hospice II*, 2015 WL 9581743, at *8; *Davern*, 2015 WL 6872427, at *4; *U.S. ex rel. Yannacopolous v. General Dynamics*, 457 F. Supp. 2d 854, 860 (N.D. Ill. 2006).

14

and-paste statement that the United States has recited in many other FCA cases—and that courts have consistently rejected. *See, e.g.*, *Life Care*, 912 F. Supp. 2d at 626 (describing the same proffered justification as "untenable"); *U.S. ex rel. Fadlalla v. DynCorp Int'l, LLC*, No. 8:15-cv-01806, Dkt. No. 31 at 3 (D. Md. Oct. 10, 2018) (noting that another court had rejected this verbatim justification as "conclusory and unpersuasive" and commenting that it "ha[d] not improved the second time around").

The United States' boilerplate explanation that its pre-intervention filings were "provided by law to the Court alone" does nothing to show that unsealing those filings would "reveal confidential investigative techniques," "jeopardize ongoing investigations," or "injure non-parties"—the only circumstances courts have recognized as supporting continued secrecy in FCA actions. *Bingham*, 2012 WL 5997952, at *2. The governments cannot possibly claim that those filings would jeopardize an ongoing investigation because they have already admitted that they have *completed* their investigation. Indeed, that was the entire premise of their recently denied motions to intervene. (*See* Dkt. No. 66 at 4-5 (arguing that good cause exists for the United States to intervene because it has now completed its investigation); Dkt. No. 72 at 1 (Tennessee motion seeking to intervene "for the same reasons as the United States").) While Defendants, of course, have no way to know whether prior filings may have discussed the governments' "investigative methods or techniques," several other courts have observed that similar requests for extensions of the FCA intervention deadline contained only "general, routine information" about the investigation. *Yannacopolous*, 457 F. Supp. 2d at 859; *see also*, *e.g.*, *Yannity*, 2011 WL 4484804, at *6 ("[T]he investigatory procedures discussed in the Government's motions … suggest that it has gathered routine information from entities that a lay person could readily identify as likely sources for a FCA investigation."); *Davern*, 2015 WL 6872427, at *4 (noting that the government's extension requests "contain[ed] only general references to its efforts to investigate

15

the case"). Defendants have no reason to believe that the governments' extension requests in this case were any different. Finally, as for any potential harm to non-parties, the names of individuals identified in the complaint became public when the Complaint was unsealed, and the United States has already publicly sought to assert claims against two of those individuals. (See Dkt. No. 66 at 5.) The United States clearly has no concern about reputational harm to *them*, and it has offered no reason to conclude that unsealing the full docket would harm anyone else.

"While public access to judicial records is not absolute, the strong presumption in favor of public access is not easily overcome." *Herrera*, 665 F. Supp. 2d at 785. Here, not only have the governments not offered any *compelling* reason for maintaining a blanket seal over earlier docket entries, they have barely offered any reason at all.[8]

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court enter an order unsealing all documents filed in this action that remain under seal.

Dated this 15th day of April 2021.

---

[8] The United States' proffered justification for maintaining past filings under seal appears to relate *only* to its requests for extensions of the seal period and intervention deadline. (*See* Dkt. No. 41 at 2 ("[S]uch papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.").) The United States has thus far not even tried to explain why any other documents should remain under seal.

16

Respectfully submitted:

BASS BERRY & SIMS PLC

/s/ Matthew M. Curley
Matthew M. Curley
Molly K. Ruberg
Scott D. Gallisdorfer
150 Third Avenue South, Suite 2800
Nashville, TN 37201-3001
Telephone: (615) 742-6200
mcurley@bassberry.com
mruberg@bassberry.com
scott.gallisdorfer@bassberry.com

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
Alan E. Schabes (*admitted PHV*)
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Telephone: (216) 363-4589
aschabes@beneschlaw.com

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
Juan Morado, Jr. (*admitted PHV*)
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: (312) 212-4967
jmorado@beneschlaw.com

*Attorneys for Defendants SouthEast Eye
Specialists, PLLC, SouthEast Eye Surgery
Center, LLC, and Eye Surgery Center of
Chattanooga, LLC*

17

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following, and/or served the foregoing via U.S. Mail and electronic mail upon:

Ellen Bowden McIntyre
UNITED STATES ATTORNEY'S OFFICE
MIDDLE DISTRICT OF TENNESSEE
110 9th Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
ellen.bowden2@usdoj.gov

Philip H. Bangle
TENNESSEE ATTORNEY GENERAL'S OFFICE
PO Box 20207
Nashville, Tennessee 37202-0207
Philip.Bangle@ag.tn.gov

William Michael Hamilton
PROVOST, UMPHREY LAW FIRM, LLP
4205 Hillsboro Pike, Suite 303
Nashville, Tennessee 37215
mhamilton@pulf.com

Amy L. Easton
PHILLIPS & COHEN LLP
2000 Massachusetts Avenue, N.W.
Washington, District of Columbia 20036
aeaston@phillipsandcohen.com

Jeffrey W. Dickstein
PHILLIPS & COHEN LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 2790
Miami, Florida 33131
jdickstein@phillipsandcohen.com

/s/ Matthew M. Curley

18