UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF TENNESSEE ex rel. GARY ODOM and ROSS LUMPKIN, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:17-cv-00689 ) |
| SOUTHEAST EYE SPECIALISTS, PLLC, SOUTHEAST EYE SURGERY CENTER, LLC, EYE SURGERY CENTER OF CHATTANOOGA, LLC, DARYL F. MANN, and JOHN R. BIERLY, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Almost 5 years in and still at the discovery stage, this litigation has spawned battles at every turn. The opening shot was fired when Gary Odom and Dr. Ross Lumpkin, on behalf of the United States and the State of Tennessee, filed a sealed *qui tam* Complaint. In it, they alleged that Defendants (a medical practice group employing both optometrists and ophthalmic surgeons, and two affiliated surgery centers) implemented a scheme that violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). In turn, the submission of claims for payment was allegedly fraudulent for purposes of the federal False Claims Act ("FCA"), 31 U.S.C. § 3728, et seq., and its state law counterpart, the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181, et. seq.

The campaign then ground to a halt for the next 28 months while the Government hunkered down and considered whether to intervene.[1] After six extensions of the statutory 60-day sealing

---

[1] For ease of reference, the Court will refer to the United States and the State of Tennessee collectively in the singular because their interests are allied and the United States spearheaded the

period, the Court gave the Government a final deadline: notify the Court as to any intervention decision by August 9, 2019. (Doc. No. 40). On the deadline, the United States and Tennessee filed a joint notice that they were not intervening "at this time." (Doc. No. 41 at 1).

Six months after the United States indicated it would not intervene, however, it reversed course by filing a Motion to Intervene, adding as defendants the co-founders and top corporate officers of the medical practice and surgery centers, and staying the case for yet another 90 days. The Magistrate Judge recommended that the Government's Motion be granted. However, after further briefing and two hearings, this Court declined to follow the recommendation and denied the Government's motion to intervene because it had remained in the trenches for far too long.

Out-flanked and unwilling to accept defeat, the Government filed a Notice of Appeal. (Doc. No. 110). Two weeks later, on April 15, 2021, the United States and the State of Tennessee filed a Motion to Unseal (Doc. No. 112) some, but not all, of the documents that had previously been placed under seal. Among those they wanted to keep sealed or partially sealed was an affidavit from Agent Angela Beverly detailing the investigation the Government had undertaken during the intervention period. At the same time, Defendants filed their own motion requesting that all documents be unsealed (Doc. No. 113) arguing, among other things, that the Government waived any privilege it may have had when Agent Beverly's affidavit was discussed in open court, and that "in light of the United States' pending appeal of the Court's order denying its motion to intervene, fairness and due process interests require that Defendants and their counsel have full access to the

---

intervention operation.

affidavits." (Doc. No. 114 at 9).[2] As would be expected, these motions themselves led to a fusillade of filings over the next month. (Doc. Nos. 113-122)

On May 6, 2021, an Amended Complaint was filed. (Doc. No. 123). The next day, the Sixth Circuit granted the Government's request to voluntarily dismiss its appeal. (Doc. No. 124).

With the appellate sortie abandoned, one might think that the issue involving the unsealing of documents would become moot, or at a minimum one of the parties would abandon their post. Such thinking, however, would mean that the parties lay down their arms, or one party surrender, which no one was willing to do. Instead, in response to an Order from the Magistrate Judge, the parties filed a joint statement in which Defendants argued that the dismissal of the appeal had no effect on its motion, while the Government argued that the dismissal moots Defendants' primary argument, and also makes its own argument stronger.

It is in this theater that the battle lines are drawn for the duel over sealing. The Court enters the fray with the recognition that the sealing or unsealing of documents is a matter of discretion "bounded by a 'long-established legal tradition' of the 'presumptive right of the public to inspect and copy judicial documents and files.'" Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co., 834 F.3d 589, 593 (6th Cir. 2016) (quoting In re Knoxville News–Sentinel, 723 F.2d 470, 474 (6th Cir. 1983)). "In civil cases, as much as in criminal matters, '[t]he resolution of private disputes frequently involves issues and remedies affecting third parties or the general public,' and secrecy serves only to 'insulate[ ] the participants, mask[ ] impropriety, obscur[e] incompetence, and conceal[ ] corruption.'" Id. (quoting Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165,

---

[2] The reference to "affidavits" in the plural is because Agent Beverly's affidavit was submitted in both redacted and unredacted form. The unredacted version was for "counsel's eyes only."

3

1179 (6th Cir. 1983)).

The burden of overcoming the presumption of openness "is borne by the party that seeks to seal them," and it is "a heavy one" for "'[only the most compelling reasons can justify non-disclosure of judicial records.'" Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan, 825 F.3d 299, 305 (6th Cir. 2016) (quoting In re Knoxville News–Sentinel Co., 723 F.2d at 476. "Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." Id.

The Government struck first by filing a Motion to Unseal Certain Docket Entries. (Doc. No. 112). Its foray into the field was deficient, however, because the Government ran afoul of Local Rule 7.01(a)(2), which states that "every motion that may require the resolution of an issue of law must be accompanied by a separately filed memorandum of law citing supporting authorities" and where appropriate other exhibits. L.R. 7.01(a)(2). The Government's position that its "motion did not require the resolution of any issue of law, because it simply ask[ed] the Court to unseal certain docket entries" (Doc. No. 117 at 3), rings hollow because the Government knew full-well that Defendants opposed unsealing anything other than the entire docket. This is evidenced by the email parleys between counsel that preceded the filing of the Government's Motion (Doc. No. 113-1). It also rings hollow given the clear presumption in favor of public access to court filings. Invoking Rule 1's caveat that the Federal Rules "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, is too flimsy a basis for the Government to claim that it "originally anticipated filing a *second* motion that would have included a memorandum of law." (Doc. No. 117 at 3) (emphasis in original).

4

Regrouping after Defendants noted the deficiency in filing, the Government filed a Notice of Intent to File a Reply Brief that complied with Local Rule 7.01(a). (Doc. No. 116 at 1). Although that brief was filed, and while it contained legal arguments, it ran afoul of this Court's stated Judicial Preference 9:

> **Preferences regarding the submission of briefs and supporting memorandum of law.**
>
> Counsel should never incorporate legal authority or factual argument from another document, including a prior brief or the brief of another party in the case.

www.tnmd.uscourts.gov/sites/tnmd/files/Judicial%20Preferences%2020200420.pdf. This language could hardly be clearer yet, in its brief, the Government repeatedly attempts to "adopt and incorporate" arguments made in prior filings. (Doc. Nos. 118 at 6, 13, 20). Despite the Government's repeated tactical blunders, the Court soldiers on.

Through attrition, the skirmish has now dwindled down to a handful of documents. Specifically, the Government insists that there are compelling reasons that justify filing only redacted versions of the following on the public docket: (1) the four Government Memoranda supporting requests for extensions of the initial seal period; (2) Agent Beverly's affidavit; and (3) the transcript of the February 24, 2021 hearing.

At this point, the Court retreats a bit to highlight the "[a]lmost unique . . . qui tam enforcement provisions, which allow a private party known as a 'relator' to bring an FCA action on behalf of the Government." State Farm Fire & Cas. Co. v. United States ex rel. Rigsby, 137 S. Ct. 436, 440, (2019). "[I]n attempting to balance the government's investigatory needs against the need for public access to court documents, Congress crafted a detailed process for initiating and pursuing a qui tam complaint under the FCA, including a narrow window of time (i.e., 60 days) in which the

5

seal provisions are mandatory." ACLU v. Holder, 673 F.3d 245, 253 (4th Cir. 2011). The Fourth Circuit further elaborated on the process:

> Sometimes the United States is aware of the alleged fraud described in a qui tam complaint. Sometimes it is not. Either way, upon receiving a qui tam complaint, the Department of Justice's investigation usually requires Department of Justice personnel to consult with investigators within the Department of Justice and personnel within the federal agency that is the alleged fraud victim. The seal provisions provide time for such consultation and investigation so that the United States may make an informed decision about whether to intervene in the qui tam action. The seal provisions also allow the government an opportunity to determine whether the qui tam action implicates any ongoing civil or criminal fraud investigations and to determine whether to request a stay of the action pursuant to 31 U.S.C. § 3730(c)(4). Because Congress recognized that some investigations might require more than 60 days, the 1986 Amendments permit the United States, "for good cause shown," to file a motion in camera with affidavits or other submissions to extend the seal. The United States must file such a motion before the 60–day period expires. At that point, a federal court must review the motion and determine whether to extend the seal. If the court decides to extend the seal, the qui tam complaint, the docket sheet, the government's in camera submission, and the order extending the seal all remain sealed. If the court declines to extend the seal, the above-referenced items are unsealed.
>
> At the conclusion of its investigation, the United States decides whether to intervene in the qui tam action.

Id. at 250. Even if the Government does not intervene, "[t]he Attorney General retains the authority . . . to bring an FCA suit in the first instance." Rigsby, 137 S. Ct. at 440.

The four Memoranda at issue were filed at the end of the 60-day period and each required that the Government "demonstrate 'good cause' to [this] court for extending the seal." ACLU at 254. It did so by revealing some of its intent regarding further investigation. Those revelations are covered by the investigative or law enforcement privilege.

"[P]rotected information" under the investigative privilege "includes information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel

6

[or] the privacy of individuals involved in an investigation,' and information that would 'otherwise ... interfere[ ] with an investigation.'" In re The City of New York, 607 F.3d 923, 943–46 (2d Cir. 2010) (quoting In re Dep't of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988)). Importantly, an investigation "need not be ongoing for the law enforcement privilege to apply as 'the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information' is revealed to the public." Id. (citations omitted).

Once properly invoked, "there ought to be a pretty strong presumption against lifting the privilege. Otherwise, the courts will be thrust too deeply into the criminal investigative process." Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997) (citing Black v. Sheraton Corp., 564 F.2d 531, 545–47 (D.C. Cir.1977)). "To rebut that presumption, the party seeking disclosure must show (1) that its suit is 'non-frivolous and brought in good faith,' (2) that 'the information sought is [not] available through other discovery or from other sources,' and (3) that the information sought is 'importan[t]' to the party's case." In re City of New York, 607 F.3d at 946 (quoting Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1343 (D.C. Cir.1984)).

Defendants cannot rebut the presumption insofar as the redacted information applies to their interests in this case. That ship sailed when the Court denied the Government's motion to dismiss, and became water under the bridge when the Government dropped its appeal.

As for the public's interest in open court records, Defendants note that courts have found that "general routine information" about an investigation is "insufficient to justify indefinite secrecy." (Doc. No. 122 at 5) (citations omitted). In so doing, however, Defendants concede that they "lack access to these memoranda and thus have no way to fully assess the validity" of the Government's invocation of the privilege. In essence, the Government is fighting an unarmed opponent.

7

In this case, the de minimus number of lines sought to be redacted from the memoranda contain more than "general routine information." At a minimum they include information about the techniques and procedures the Government had, or intended, to employ, and suggest potential sources. The Court, of course, has no way of knowing whether the Government is continuing its investigation, or where the information it has received thus far might lead.

Arguably, much the same can be said about Agent Beverly's affidavit. In fact, the Government invokes not only the investigative privilege, but also the deliberative process privilege with respect to all or some of paragraphs 53, 57, 58 and 61 of her affidavit. In support of the privilege, the Government has submitted a Declaration from Mark Wildasin, who was then Chief of the Civil Division and is now the United States Attorney for this District. (Doc. No. 119).

The deliberative process privilege "is a form of executive privilege," and "protect[s] agencies from being 'forced to operate in a fishbowl.'" United States Fish & Wildlife Serv. v. Sierra Club, Inc., 141 S. Ct. 777, 785 (2021) (quoting EPA v. Mink, 410 U.S. 73, 87 (1973). "The privilege is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" Id. (quoting Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). It "is primarily a common law privilege, and it covers records documenting the decisionmaking of executive officials generally." Protect Democracy Project, Inc. v. Nat'l Sec. Agency, 10 F.4th 879, 885 (D.C. Cir. 2021)

Both the investigative and the deliberate process privileges, however, are qualified and not absolute. As such, each can be waived. See United States v. Nobles, 422 U.S. 225, 239 (1975) (stating that privileges deriving from the work product doctrine and investigative privilege may be waived); Protect Democracy Project, Inc. v. Nat'l Sec. Agency, 10 F.4th 879, 886 (D.C. Cir. 2021)

(observing that deliberative process and presidential communications privileges can be waived).

The parties tussle over whether the Government waived any privilege it had in Beverly's Affidavit. The Government submits it did not because it was "judicially compelled" to submit Beverly's affidavit and "the government[] repeatedly objected to the Court's order to produce the Beverly affidavit to SEES for fear that it would result in waiver of privileges, and the Court specifically permitted the affidavit to be filed under seal with only redacted copies for defense counsel's eyes only to avoid that outcome." (Doc. No. 118 at 19). In response, Defendants insist the Government was not "judicially compelled" to submit Beverly's affidavit, writing:

> The Court's order . . . was only in *response* to the governments' own *voluntary* decision to rely on their purported new "investigative findings" as the good cause to support their motions to intervene. Nothing required the governments to rely on those findings in support of their motion, or even to seek intervention at all. Once they did so, however, the Court only asked that they provide specific information about the findings as support for their requested relief. If the governments did not wish to provide those details, they were free to withdraw their motions—or cite an alternative basis for "good cause"—any time. It was thus the governments themselves, not the Court, who "injected" the nature and timing of their supposedly privileged investigative findings into the proceedings in the first place.

(Doc. No. 122 at 3) (emphasis in original, footnote omitted).

As interesting as those arguments might be, they became moot once AUSA Ellen McIntyre relied upon Beverly's affidavit during oral argument at the February 24, 2021 public hearing and specifically discussed the paragraphs the Government now seeks to redact. Contrary to the Government's assertion that members of the public were not in attendance, K&L Gates attorney Sarah D.E. Staples apparently was present "and took notes." See Matt Hubbell and Sarah D.E. Staples, "District Court SEES a Lack of Good Cause to Intervene After Prior Declination," AMERICAN HEALTH LAW ASSOCIATION BULLETIN (Apr. 22, 2021), available at https://marketingstorageragrs.blob.core.windows.net/webfiles/AHLA_Bulletin_FA_Hubbell_Sta

ples.pdf. In any event, the transcript of the hearing was available for purchase by the public from the date of the hearing onward, and it was officially filed on February 26, 2021 (Doc. No. 105), almost two months before the Government requested it be redacted.[3] It has remained available to the public for over a year, and that bell cannot now be unrung. See Rudd Equip. Co., 834 F.3d at 592 (citation omitted) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again."); Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr., 913 F.3d 443, 449 (5th Cir. 2019) (stating that "unsealing a document cannot be undone").

At the end of the day when Taps play, each side can claim partial victory, although no ground has been gained. The unredacted version of Agent Beverly's Affidavit will be unsealed, but the four Memoranda filed in support of continuing the seal period will be unsealed only in their redacted form. With these ruling, the Court transfers the operations center back to Magistrate Judge Newbern for further pretrial case management.

Appropriate marching Orders will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] The Court recognizes that, at the start of the hearing, AUSA McIntrye stated, "I wanted to briefly ask the Court to seal any portion of the transcript in this case that contains references to the sealed versions of the two agent affidavits since they are currently under seal." (Doc. No. 105 at 5). This request was denied by the Court "because there's a procedure for sealing – this is a public courtroom, to which the public is invited, and there's a process for doing that, which you have not followed." (Id.).